[Civ. No. 4987. Third Appellate District.—September 14, 1934.]

THOMAS W. HINE, Appellant, v. THE STATE LIFE INSURANCE COMPANY OF INDIANAPOLIS, INDIANA, Respondent.

Nelson & Ricks for Appellant.

Eugene S. Selvage, A. G. Bradford, Francis V. Keesling and Garton D. Keyston for Respondent.

DEIRUP, J., *pro tem.*—This is an action to recover from the respondent certain sums of money, claimed to be due to appellant under bonus contracts executed as an inducement for the acceptance of a policy of insurance.

On February 24, 1902, respondent issued to appellant a ·policy of life insurance in the sum of $10,000, which is still in force. The policy is of the type known as a 20-payment, deferred dividend life policy; that is to say, the respondent agreed in the policy that if the appellant paid the annual premiums for 20 years, he would then be entitled to receive all dividends that had accrued up to the end of said 20-year period and would be insured for the balance of his life without the payment of any premiums. The policy gave to appellant certain other privileges. He could leave the dividends with the respondent as paid-up life insurance; or he could withdraw not only the dividends but the cash surrender value as well and terminate the contract, or convert the cash value into an annuity. If he elected to keep the insurance in force, he would receive dividends annually and would have the right at any time to surrender the policy and collect its cash surrender value, which increased from year to year.

As an inducement for appellant to accept the policy the respondent issued to him two special agreements, called "D. of I." contracts. Each of these contracts designated ap·

pellant as a member of the ''Department of Information and Inspection'' of respondent and provided for the payment to him ''as compensation for his services . . . each year during the continuance of this contract, one sixtieth of one per cent of all premiums it (i. e. the respondent) receives in cash, during the preceding year, on insurance it shall write in the State of California from the date of this contract up to and including the year 1921, so long as premiums shall be received as above''. There being two such contracts, the percentage to which appellant became entitled was one-thirtieth of one per cent of all such premiums on California insurance.

Appellant paid the 20 annual premiums called for by the policy contract. The policy matured on February 24, 1922. On January 25th of that year appellant wrote a letter to respondent, asking for a statement of the options to which he would become entitled upon the maturity of the policy. The letter was answered by C. H. Beckett, respondent's actuary. Appellant wrote for further information and received a reply in detail from Beckett. Appellant then withdrew the accrued dividends, allowing the insurance contract to continue as a paid-up life policy.

Until the maturity of the policy appellant received annually under the ''D. of I.'' contracts one-thirtieth of one per cent of the premiums that were paid to respondent on insurance written in California. The percentage for 1921 was $155.42, which was paid along with and in addition to the accrued dividends on the policy. After the maturity of the policy respondent paid or tendered to appellant annually such percentages of its premiums on insurance written in California before February 24, 1922. The sums paid or offered decreased as policies written before 1922 matured or were terminated. Appellant refused to accept the payments that were tendered for the years 1929 to 1932, inclusive, claiming that he was entitled to receive the ''D. of I.'' percentage on all premiums paid on insurance written in California after, as well as before, the year 1922 and brought this action to recover the full amount of such percentages. The trial court allowed judgment only for the sums tendered and refused. Appellant has appealed from the judgment, the record consisting of the judgment-roll.

Appellant's claim is based on the letters that passed between him and respondent's actuary just before the maturity of the policy. They are set out in the findings of the court. The statements on which appellant relies are as follows:

In his reply to appellant's first inquiry, the actuary wrote on January 27, 1922:

"The policy is now fully paid up, and no further premium payments are required. During the first period of 20 years, your policy was a deferred dividend policy, but if it is continued in force, dividends would be credited to it annually, beginning February 24, 1923, and you would also retain your interest in the California D. of I. contract. Your policy would be in accordance with the following table . . . A paid up participating policy is a very valuable asset, and we congratulate you upon being the possessor of such a contract." Appellant then wrote that he "had practically decided to cancel this policy and take the cash value", but before deciding definitely what to do "I wish you to answer the following questions categorically, so that I may know that I fully understand the situation." He then asked about the cash surrender value and later said:

"3. Should I decide to continue the policy, is my understanding correct that my California D. I. will be continued during the time that I carry the policy as paid up insurance and that those dividends will be based as heretofore on the amount of business done in the State, so in case of increase in the amount of business done here, the California D. I. will be correspondingly increased." To this the actuary replied:

"Third, you are correct in your understanding that if you continue the policy the California D. of I. contract commissions would be paid up, and the amount that would be paid depends on our California business, as you will find in our California contract. Of course, these commissions increase very rapidly. You have a policy of very great value, and it appears to us that under no consideration would you think of losing it. . . . We would certainly advise you to continue the policy for it appears to us that any other course would be almost unthinkable."

In the last letter in the series appellant stated that he had decided to continue the insurance for $10,000 and withdraw the accrued dividends and the "D. of I." commission then due, and added: "I now understand that I am to continue

the policy as paid up, withdrawing each year the dividends in cash and the Cal. D. I. Cons. as stated in the fourth paragraph of your letter.''

■ Appellant's sole contention on this appeal is that the parties, in their correspondence, entered into a new contract by which the terms of the original ''D. of I.'' agreements were so amplified as to include a percentage of premiums collected from insurance written in California after February 24, 1922. The consideration for the new contract was (he claims) his leaving with the respondent the cash value of the policy. It will be noted, however, that the insurance contract was primarily for the life of the appellant and that the right to withdraw the cash value and terminate the contract was an alternative option. It will be noted also that there is no suggestion that appellant agreed to leave the cash value with the respondent for any period of time. He merely refrained from withdrawing it on February 24, 1922, retaining the right to draw it out with its accumulations at any time thereafter and to cancel the policy.

The trial court found ''that said correspondence did not modify said 'D. of I.' contracts nor create a new contract between plaintiff and defendant''. That finding is undoubtedly correct. The correspondence does not indicate an intention on the part of either of the parties to make a new contract or to modify their existing rights in any respect. All of the questions and answers relate to the policy and the original ''D. of I.'' contracts. There is no expression of any desire to make a new bonus agreement. In fact, such an agreement, if made, would have been contrary to law, for insurance companies were prohibited in 1917 from offering special inducements not set out in the policy, for the acceptance of insurance contracts (Pol. Code, sec. 633b).

■ The statements that were made by the actuary amounted only to his interpretation of the legal rights of the appellant. Inasmuch as the terms of the original contracts are unequivocal his interpretation did not affect those rights (*Hughes* v. *Pacific Wharf Co.*, 188 Cal. 210 [205 Pac. 105]).

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.